UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JULIE SANDERS,

      Plaintiff,

v.                                                Case No. 3:17cv742-RV-CJK

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

     This case has been referred to the undersigned magistrate judge pursuant to 28

U.S.C. § 636(b) and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A),

72.2(D), and 72.3, relating to review of administrative determinations under the

Social Security Act ("Act").  The case is now before the court pursuant to 42 U.S.C.

§ 405(g) for review of a final determination of the Commissioner of Social Security

("Commissioner") denying claimant's applications for disability insurance benefits

("DIB") under Title II of the Act, 42 U.S.C. §§ 401-34, and supplemental security

income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83.  Upon review of

the record before the court, I conclude the findings of fact and determinations of the

Commissioner are supported by substantial evidence. I thus recommend the Commissioner's decision be affirmed and plaintiff's applications for DIB and SSI be denied.

## ISSUE ON REVIEW

Ms. Sanders, who will be referred to as claimant, plaintiff, or by name, raises a single issue on appeal. She argues the ALJ "erred in affording 'little weight' to the opinions of treating physician Dr. Braumiller thereby failing to adequately account for nonexertional limitations in the RFC and sequential analysis in accordance with SSR 85-15." Doc. 12 at p. 1.

## PROCEDURAL HISTORY

Ms. Sanders filed applications for DIB and SSI on September 30, 2014, alleging disability beginning March 26, 2013, due to neck pain, back pain, bilateral ankle problems, bilateral heel pain and bone spurs, depression, anxiety, post-traumatic stress disorder, and MRSA. T. 116-18, 131-33, 163-64, 255-64.[1] Her claims were denied initially and on reconsideration. T. 131, 163, 182-203. Ms. Sanders appeared for a hearing before an Administrative Law Judge ("ALJ") on May

---

[1] The administrative record, as filed by the Commissioner, consists of 11 volumes (docs. 10-1 through 10-11) and has 728 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

18, 2016.  T. 51-88.  On September 1, 2016, the ALJ issued a decision denying Ms. Sanders' applications for benefits.  T. 30-50.  Ms. Sanders petitioned the Appeals Council for review of the ALJ's decision.  T. 190-91.  The Appeals Council denied the request.  T. 1-6.  The ALJ's decision thus became the final determination of the Commissioner.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relevant to the issue raised in this appeal:

- "The claimant meets the insured status requirements of the Social Security Act through September 30, 2015."  T. 35.

- "The claimant has not engaged in substantial gainful activity since March 26, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)."  T. 35.

- "The claimant has the following severe impairments: depressive disorder, anxiety disorder, back and neck pain, plantar fasciitis, obesity, and a heel spur  (20 CFR 404.1520(c) and 416.920(c))."  T. 35.

- "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." T. 36.

- "[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently.  The claimant can frequently climb ramps and stairs, and occasionally climb ladders[,] ropes, or scaffolds.  The claimant can frequently balance[,] stoop, kneel, crouch, and crawl.  The claimant can occasionally be exposed to unprotected heights and moving mechanical parts.  The claimant's ability to understand, remember, and carry out instructions is limited to simple and routine tasks.  The claimant's ability to use judgement is limited to simple work-related decisions.  The claimant can interact with supervisors and coworkers occasionally, and should avoid teamwork activities with coworkers.  The claimant can work around the public, but should avoid direct contact with the public, either on the telephone or via face-to-face communication. The claimant can deal with occasional changes in the work setting."  T. 38.

- "The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)." T. 43.

- "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." T. 43.

- "The claimant has not been under a disability, as defined in the Social Security Act, from March 26, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))." T. 44.

<u>STANDARD OF REVIEW</u>

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol.*

*Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as

"an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985).[2]

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial[.]gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). To be eligible for disability benefits, a claimant must prove she became disabled prior to the expiration of her date last insured. *See* 42 U.S.C. §§ 416(i)(3), 423(a) and (c); 20 C.F.R. §§ 404.101, 404.130, 404.131; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in 5 steps:

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.[3]

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, she is not disabled.

Step 5 (or step 4 in cases in which the ALJ decides a claimant can perform past work) is generally where the rubber meets the road. At that point, the ALJ formulates the all-important residual functional capacity ("RFC"). The ALJ establishes RFC,

---

[3] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

utilizing the impairments identified at step 2, by interpretation of (1) the medical evidence; and (2) the claimant's subjective complaints (generally complaints of pain). Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step 5.[4]  "[R]esidual functional capacity is the most [a claimant] can still do despite [claimant's] limitations.[5]  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Often, both the medical evidence and the accuracy of a claimant's

---

[4] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20. C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[5] In addition to this rather terse definition of RFC, the Regulations describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 416.912(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 416.912(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 416.913.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends or other persons.  (See paragraph (e) of this section and § 416.929.)[.]

20 C.F.R. § 416.945(a)(3).

Case No. 3:17cv742-RV-CJK

subjective complaints are subject to a degree of conflict and that conflict leads, as in this case, to the points raised on judicial review by the disappointed claimant.

FACT BACKGROUND[6]

Ms. Sanders was 41 years old on the alleged onset date and 45 years old on the date of the ALJ's decision. T. 117, 132. She has an associate's degree in office systems technology and worked as an insurance clerk. T. 57, 81. Although Ms. Sanders has a number of physical impairments, only her mental impairments are relevant for purposes of this appeal.

Ms. Sanders sought mental health treatment at Lakeview Center in Pensacola, Florida. She visited psychiatrist Kaberi Samanta, M.D., on August 17, 2012. T. 461. She reported significant stressors, weight gain, and depression. T. 461. Dr. Samanta diagnosed major depressive disorder, assigned a Global Assessment of Functioning ("GAF") score of 55, and prescribed Prozac.[7] T. 461-2. On October 8, 2012, Ms.

---

[6] The pertinent medical and historical facts of this case, as set forth below, were derived from the administrative record, largely as set forth by plaintiff in her memorandum.

[7] The GAF rating has two components: (1) symptom severity and (2) social and occupational functioning. The GAF is within a particular range if either the symptom severity or the social and occupational level of functioning falls within the range. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the worse of the two. The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th ed., text rev., 2000). A GAF between 51 and 60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning;" a GAF between 61 and 70 indicates "mild" symptoms or "some difficulty

Sanders saw Lokaranjit Chalasani, M.D.  T. 465.  She reported homelessness, stress, and depression.  T. 465.  Dr. Chalasani observed a dysphoric mood and constricted affect.  T. 465.  He diagnosed recurrent moderate major depressive disorder and prescribed Prozac and Xanax.  T. 465.  Plaintiff returned to Dr. Chalasani on December 4, 2012, when she reported feeling better overall but having continued anxiety.  T. 467.  Dr. Chalasani increased the Xanax dosage.  T. 467.

On June 26, 2013, Ms. Sanders saw Cheryl Pawloski, a nurse practitioner, who noted Ms. Sanders had missed a few appointments and was agitated and angry regarding medication.  T. 474.  Ms. Sanders said her Xanax dosage should be 3 times what it was and described the stressors in her life.  T. 474.  Ms. Pawloski explained they were in the process of discontinuing Xanax.  T. 474.  She also explained Ms. Sanders could not be treated with medication alone and needed therapy.  She advised that until Ms. Sanders could get therapy, she needed to go to her appointments regularly to receive medication.  T. 474.

in social, occupational or school functioning," but "generally functioning pretty well;" a GAF score between 71 and 80 indicates transient and expectable reactions to psychosocial stressors and no more than an slight impairment in social, occupational, or school functioning; a GAF score between 81 and 90 indicates no or minimal symptoms and good functioning in all areas.  *Id.*  The most recent edition of the Diagnostic and Statistical Manual no longer recommends use of the GAF scale, acknowledging that "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity and questionable psychometrics in routine practice." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

On July 18, 2013, Ms. Sanders called Lakeview, reporting the anxiety had not alleviated.  T. 447.  The following month, she saw Christina Medrano, a physician's assistant, who prescribed Seroquel for sleep.  T. 478.  Plaintiff next visited Lakeview on October 31, 2013, when she saw Annie Cherian, M.D.  T. 485.  Plaintiff's affect was flat and depressed.  T. 485.  She reported she was "always having anxiety."  T. 485.  She also indicated she did not like group therapy  and individual therapy was not available.  T. 486.  Dr. Cherian diagnosed major depressive disorder and generalized anxiety disorder and prescribed Buspar.  T. 485-86.  When plaintiff returned to Dr. Cherian on April 8, 2014, she said she attempted to sell plasma but was unable to do so because of anxiety.  T. 493.  She seemed motivated to continue treatment and seek counseling services.  T. 493.

On July 18, 2014, Ms. Sanders saw Brian Braumiller, DO, stating she was "doing really well on the medication," which included Seroquel, Prozac, and Vistaril. T. 498-99.  She said she was having "a little trouble going to sleep, but she fe[lt] good, much better than she did."  T. 498.  Ms. Sanders indicated her depression and anxiety had improved.  T. 498.  Dr. Braumiller nevertheless noted a depressed mood and sad affect.  T. 498.  On August 22, 2014, Dr. Braumiller prescribed Ativan for anxiety and discontinued Vistaril.  T. 502-03.

The following month, Ms. Sanders stated she wanted to sell plasma to make money but was prevented from doing so while taking Ativan, a benzodiazepine.  T. 504.  She decided to discontinue Ativan temporarily and resume taking it in a couple of months.  T. 504.  During the next visit, she indicated she wanted to resume Ativan because it "helped so much with her anxiety."  T. 505.  A few weeks later, Ms. Sanders was anxious and tearful with a labile mood.  T. 505.  Anna Reynolds, a nurse practitioner, observed Ms. Sanders "had multiple traumas occur in her life" and referred her for "trauma counseling," as well as vocational rehabilitation and a bus pass.  T. 505.

As of October 14, 2014, Ms. Sanders was "doing really well on her medication," although she was "still having some breakthrough symptoms of depression."  T. 509.  Her mood was depressed and her affect was sad; Dr. Braumiller increased the Prozac dosage.  T. 509.  Ms. Sanders saw another nurse practitioner, Jennifer Upcraft, on January 30, 2015.  T. 590-92.  Ms. Sanders said she was "doing well," but not getting enough sleep.  T. 590.  Ms. Upcraft noted a depressed and tearful mood with a congruent affect and prescribed Trazodone.  T. 590-91.

Plaintiff returned to Lakeview on March 3, 2015, reporting continued mood swings, crying spells, and easy agitation and frustration.  T. 593.  She was tearful and

depressed.  T. 593.  N. P. Upcraft prescribed Depakote.  T. 594.  Plaintiff saw N. P. Upcraft again on May 17, 2016, when she remained tearful and depressed.  T. 727. Upcraft adjusted Ms. Sanders' medication.  T. 727.

Dr. Braumiller completed a Treating Source Mental Status Report on October 14, 2014.  T. 527.  He described Ms. Sanders' mood as depressed and anxious and her affect as sad and constricted.  T. 527.  He indicated she was logical and goal directed; coherent without signs of psychosis; her concentration and memory were grossly intact, although not formally tested; she was oriented to person, place, and time;  had no signs of psychosis; and denied hallucinations and paranoid ideation.  T. 528.  She was appropriately groomed, with a neat appearance, and cooperative.  T. 528.  Dr. Braumiller diagnosed major depressive disorder, recurrent and moderate, and noted Ms. Sanders' prognosis was guarded and she needed ongoing treatment.  T. 528.  Dr. Braumiller opined that although Ms. Sanders could follow simple instructions for a limited amount of time, she could not sustain work activity for 8 hours a day, 5 days a week, because "her anxiety and depression impair her occupational functioning." T. 529.

Dr. Braumiller also completed a Medical Opinion RE: Ability to do Work-Related Activities (Mental) form.  T. 525.  Dr. Braumiller indicated plaintiff was

unable to meet competitive standards in the following mental abilities and aptitudes needed to do unskilled work: ability to remember work-like procedure; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and deal with normal work stress. T. 525. Dr. Braumiller noted "Client would experience an increase in anxiety and depression which would impair her occupational functioning." T. 525. Dr. Braumiller opined Ms. Sanders would be unable to meet competitive standards in the following semi-skilled and skilled aptitudes: carry out detailed instructions; set realistic goals or make plans independently of others; and deal with stress of semiskilled and skilled work.  Dr. Braumiller noted, "An increase in depression and anxiety would impair her concentration and focus." T. 526. Finally, Dr. Braumiller found plaintiff unable to meet competitive standards as to use of public transportation, noting she had "[i]nterpersonal difficulties." T. 526.

ANALYSIS

Plaintiff claims the ALJ erred in giving little weight to Dr. Braumiller's opinions. Absent good cause, the opinions of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440; *Broughton v. Heckler*, 776 F.2d 960, 960-61 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases). If a treating physician's opinion as to the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ is to give it controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). Where a treating physician has merely made conclusory statements, however, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v.*

*Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ nevertheless must weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c).

Opinions on certain issues, such as a claimant's RFC and whether a claimant is disabled, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(d), 416.927(d); *see* SSR 96-5p.  Opinions reserved to the Commissioner, even when offered by a treating physician, are not entitled to controlling weight or special significance.  *See* SSR 96-5p.  "Giving controlling weight to such opinions . . . would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."  *Id.*  Although a physician's opinions about what a claimant can still do or the claimant's restrictions may be relevant, therefore, such opinions are not

determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 416.927(d), 416.945(a)(3), 416.946(c); SSR 96-5p.

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [the] reasons." *Phillips*, 357 F.3d at 1241.  Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (*citing MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  An ALJ may choose to accept some conclusions – or restrictions – within an opinion while rejecting others.  If such a choice is made, in addition to explaining the overall weight given to a particular medical opinion, the ALJ must explain "'with at least some measure of clarity the grounds for [a] decision'" to adopt particular aspects of a medical opinion.  *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (*quoting Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).  Failure to explain the rationale for crediting only certain aspects of an opinion will result in a reviewing court "declin[ing] to affirm 'simply because some rationale might have supported the ALJ's conclusion.'"  *Id*.

Here, the ALJ gave little weight to Dr.  Braumiller's opinions, finding them inconsistent with the record as a whole, including Dr. Braumiller's own treatment notes.  T. 42.  In so finding, the ALJ noted "the claimant's treatment records for her mental impairments suggest ongoing improvement with proper medication" and

"[m]ental status exam notes through the recent treatment records have been largely normal." T. 41. Although plaintiff continued to have some degree of depression and anxiety, the undersigned finds the ALJ's decision to assign little weight to Dr. Braumiller's opinions supported by substantial evidence in the record.

As the Commissioner pointed out, in August 2012, plaintiff had a neutral mood and congruent affect, normal speech, no hallucinations, no psychotic or manic behaviors, and intact judgment. T. 461. In October, she was dysphoric with a constricted affect, but fully alert and oriented and had goal directed and organized thoughts and fair cognitive ability and insight. T. 465. There were no overt psychotic symptoms. T. 465. Findings in December were similar. T. 467.

In June 2013, Ms. Sanders reported a "terrible" mood; she was fairly groomed, however, and had normal motor functioning, fluent speech, direct eye contact, no hallucinations, goal-directed thought processes, and fair insight and judgment. T. 474. A few months later, she had neutral mood, appropriate affect, and adequate eye contact. T. 477. She did not appear anxious. T. 477. She was fully oriented with intact thought processes, no psychosis, and intact judgment and insight. T. 477. In October, she was depressed with a flat and constricted affect, but she had good eye contact and normal speech and orientation. T. 485. The examiner found no evidence

of anxiety, and noted intact memory, concentration, and judgment.  T. 485.  She also had good insight.  T. 485.  Shortly thereafter, on December 17, 2013, Ms. Sanders had a "much better" affect – "bright upon approach."  T. 488.  An exam revealed no mental abnormalities.  T. 488.

During a visit to Sacred Heart Hospital in April 2014 for a skin condition, Ms. Sanders was fully oriented with a normal affect.  T. 390.  She visited Lakeview the same month and appeared somewhat anxious, but an exam revealed no other abnormalities and her affect again was "bright upon approach." T. 493.  In July 2014, Dr. Braumiller examined Ms. Sanders and found she was doing "really well" on medication and felt "good, much better than she did."  T. 498.  She was depressed with a sad affect, but had fluent speech, good eye contact, logical and coherent thoughts, no hallucinations, normal psychomotor activity, full orientation, intact memory, and no preoccupation.  T. 498.  She had increased anxiety in August and September, but as set forth above, in October, Dr. Braumiller reported she was "doing really well on her medication" except for breakthrough symptoms of depression.  T. 509.  A mental exam resulted in normal findings.  T. 509.  She had increased anxiety in December, but she continued to have intact functioning.  T. 588.

In late January 2015, Ms. Sanders was doing well.  T. 590.  She was depressed and tearful, but was well groomed with a neat appearance, normal speech, congruent affect, logical and coherent thoughts, and no overt psychosis.  T. 590.  In early March, she reported mood swings, but again had intact mental functioning.  T. 593.  She had improved by late March, with "no problems or concerns," according to a report authenticated by Dr. Braumiller  T. 596.  She was "doing well on her medications" in May 2015 and had a normal mental status exam.  T. 599.  The same was true later in 2015 and in early 2016, except for triggers of depression.  T. 602, 606, 608, 610, 613.  In short, although the record shows Ms. Sanders experienced anxiety and depression, no objective medical evidence supported limitations to the extent Dr. Braumiller claimed in the relevant reports.  In fact, as the ALJ observed, Dr. Braumiller's opinions were unsupported by his own treatment notes.  T. 42.  *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (allowing an ALJ to consider whether an opinion is poorly supported when weighing it).

In arguing more weight should have been given Dr. Braumiller's opinions, Ms. Sanders points to her diagnoses of anxiety and depression.  Diagnoses, however, do not establish limitations.  *See Moore*, 405 F.3d at 1213 n.6 (noting "the mere existence of . . . impairments does not reveal the extent to which they limit [the]

ability to work or undermine the ALJ's determination in that regard"). Ms. Sanders also points to her own statements, as well as the statement of a friend, about her symptoms. The ALJ did not accept the statements because they were not consistent with the record, *see* T. 41, and plaintiff has not challenged those findings.

Although the ALJ gave little weight to Dr. Braumiller's opinions, he included nonexertional limitations in the RFC, finding Ms. Sanders' ability to understand, remember, and carry out instructions limited to simple and routine tasks; her ability to use judgment limited to simple work-related decisions; she could interact with supervisors and coworkers only occasionally and should avoid teamwork activities; she could work around the public, but was required to avoid direct contact with the public, either on the telephone or via face-to-face communication; and she could deal with only occasional changes in the work setting. T. 38.  Contrary to plaintiff's contention, therefore, the RFC addresses the mental abilities involved in unskilled work.  The ALJ thus satisfied the requirements of SSR 85-15.  Moreover, to the extent Dr. Braumiller opined plaintiff was unable to work, his opinion was entitled to no particular weight because it was an opinion on a matter reserved to the Commissioner.  For all of these reasons, the undersigned finds the ALJ's decision to

Case No. 3:17cv742-RV-CJK

give little weight to Dr. Braumiller's opinions supported by substantial evidence in the record.[8]

<u>CONCLUSION</u>

Although the record shows Ms. Sanders suffers from impairments, there is no objective medical evidence any such impairment renders her unable to work at the light exertional level, as the ALJ found. The Commissioner's decision is supported by substantial evidence in the record and application of the proper legal standards and thus should be affirmed.[9] *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when

---

[8] The fact that Dr. Braumiller's opinions were expressed on pre-printed forms with no substantiation reinforces the undersigned's conclusion in that regard. Where an opinion, even that of a treating physician, is offered on a preprinted check-off form that does not detail evidence in the record supporting the work-related limitations identified, such opinion will not bind the Commissioner. Courts have found such preprinted forms do not provide persuasive evidence of the validity of the opinions expressed therein. *See Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("Check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions." (*citing Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))). While such forms are certainly admissible, "they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole." *O'Leary v. Schweiker*, 710 F. 2d 1334, 1341 (8th Cir. 1983). These pronouncements very much suggest that where a party wishes to rely upon those opinions expressed on a check-off form, that party would be well-served to scour the record for actual, supportive medical evidence, consistent with the short-hand conclusions. The absence of such medical evidence will weaken or obliterate the probative value of the form.

[9] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review. *See Gilson v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

**ACCORDINGLY, it is respectfully RECOMMENDED:**

1.  That the decision of the Commissioner be AFFIRMED and Ms. Sanders' applications for DIB and SSI DENIED.

2.  That the clerk of court be directed to enter judgment for the defendant and close the file.

At Pensacola, Florida, this 7th day of November, 2018.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being a served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No. 3:17cv742-RV-CJK